IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MELINDA PALMER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 6:19-cv-00082 |
| | § | |
| PROCOLLECT, INC. and | § | |
| TRANS UNION, LLC, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT PROCOLLECT, INC.'S MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Defendant ProCollect Inc. ("ProCollect" or "Defendant"), pursuant to FEDERAL RULE OF PROCEDURE 12(b)(6), files this Motion for Summary Judgment and Brief in Support, and respectfully shows the Court as follows:

INTRODUCTION

1.     In May 2017, Plaintiff Melinda Palmer ("Plaintiff") stopped paying rent on her apartment lease with Wilson Crossing Apartments ("Wilson Crossing" or the "Original Creditor") with three months left in the term of her lease, and thereafter moved out at the end of May after an eviction proceeding was filed.  Thereafter, over a year later, Plaintiff hired a credit repair company to write and send a series of dispute letters to Defendant ProCollect and the consumer reporting agencies claiming that the debt being collected by ProCollect for the Original Creditor as a result of Plaintiff breaching her lease and being reported to the consumer reporting agencies (CRAs) was inaccurate.  As a result of the dispute, ProCollect correctly

verified the debt with the Original Creditor, ceased any communications with Plaintiff, and to assist in the payment of the debt, obtained a special reduction from the Original Creditor of the amount due. ProCollect correctly and timely provided Plaintiff with evidence of the debt in the form of her Move Out Statement with a letter showing the discounted amount due on two occasions, and explained the amount due and amounts reported to Plaintiff in response to a CFPB Complaint initiated by Plaintiff's credit repair company.

2. Despite the reduction and providing Plaintiff evidence of the debt, as well as explaining the amounts due in the CFPB Response, the credit repair company hired by Plaintiff referred the matter to Plaintiff's counsel who sent ProCollect a demand letter. ProCollect refused to pay any demand as it complied with the consumer protection statutes, but, in order to avoid litigation costs, deleted Plaintiff's account with the CRAs. Despite the fact that ProCollect wasn't collecting the debt and deleted with the CRAs, Plaintiff filed what ProCollect believes is a frivolous lawsuit to attempt to extract a settlement in bad faith. That bad faith was further established when Plaintiff was deposed, as she could not articulate any dispute with the amount sought by the Original Creditor.

GROUNDS FOR SUMMARY JUDGMENT – STATEMENT OF ISSUES TO BE DECIDED

3. Summary Judgment is proper on all of Plaintiff's causes of action for alleged violations of the FDCPA, TCPA and FCRA as there is no genuine issue of material fact and Defendant is entitled to summary judgment as a matter of law. Specifically, Plaintiff claims pursuant to the Fair Debt Collection Practices Act ("FDCPA), 15 U.S.C. §§ 1692e(2)(A) and 1692e(10) and the Texas Debt Collection Act ("TDCA"), TEX. FINC. CODE § 392.202(8) cannot survive the fact that the debt is accurate, and at a minimum, Plaintiff has no evidence that ProCollect knowingly misrepresented the character, amount of legal status of the debt or

knowingly made any false representation or deceptive means to attempt to collect the debt when ProCollect reasonably relied upon the Original Creditor's Final Account Statement and verification of the debt. In addition, Plaintiff's claims pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b)(1)(A) similarly fail because all evidence establishes that ProCollect followed its policies and procedures and performed a reasonable investigation of Plaintiff's dispute, and following that investigation, properly verified the debt.

## EXHIBITS AND BRIEF STATEMENT OF FACTS

4. In the Appendix attached hereto, ProCollect provides the following evidence to support a Final Summary Judgment against Plaintiff and incorporates same into this Motion:

Exhibit "A":   *Declaration of David Goodhart* that establishes the facts as well as business records of ProCollect:

- Exhibit "A-1":   Move Out Statement (Final Account Statement) for Plaintiff's Account detailing the debt provided to ProCollect by the Original Creditor in the original amount of $2,226.

- Exhibit "A-2":   Rental Application and selecting Lease pages provided to ProCollect by the Original Creditor to provide contact information and confirmation of parties on the Lease.

- Exhibit "A-3":   Plaintiff's Renewal Lease provided to ProCollect by the Original Creditor with a term through July 31, 2017.

- Exhibit "A-4":   Carport Repair Invoice and communication from the Original Creditor provided to ProCollect on October 25, 2017 reflecting the increase in the amount of the debt from $2,226 to $3,401.

- Exhibit "A-5":   ProCollect Account Summary for increase in the amount of Plaintiff's debt owed to the Original Creditor.

- Exhibit "A-6":   Plaintiff's October 3, 2017 dispute and request for validation letter sent to ProCollect.

  Exhibit "A-7":  ProCollect's Account Summary for the relevant entries detailing Plaintiff's disputes and ProCollect's investigation and verification of the debt and ACDV responses to the CRAs.

  Exhibit "A-8":  ProCollect's October 11, 2017 validation response letter providing Plaintiff with a copy of the Final Account Statement (including the return mail for bad address and providing forwarding address).

  Exhibit "A-9":  ProCollect's October 19, 2017 validation response letter providing Plaintiff with a copy of the Final Account Statement.

  Exhibit "A-10":  Plaintiff's November 5, 2018 second dispute letter.

  Exhibit "A-11":  ProCollect's November 8, 2017 validation response letter providing Plaintiff with a copy of the Final Account Statement.

  Exhibit "A-12":  Plaintiff's CFPB Complaint and ProCollect's Response to the Complaint, including an explanation for the different amounts sought to be collected by the Original Creditor and ProCollect.

  Exhibit "A-13":  ProCollect's relevant CBR uploads in Metro2 format establishing that ProCollect reported the correct amounts provided and verified by the Original Creditor to the CRAs.

  Exhibit "A-14":  Examples of Plaintiff's dispute letters to the CRAs that would have initiated ACD's issued to ProCollect.

  Exhibit "A-15":  ProCollect's Policies and Procedures for investigating consumer disputes related to apartment debt.

Exhibit "B":  Excerpts from the Deposition of Melinda Palmer taken on October 17, 2019 that detail that Plaintiff could not articulate any issues or disputes with the amounts sought by the Original Creditor in the Move Out Statement (Final Account Statement).

Exhibit "C":  Business Records Affidavit of Kyle Frasier/Cut Up Debt, including selected records attached thereto, including the authorizations signed by Plaintiff for Cut Up Debt to prepare and send dispute letters and complaints, the dispute letters written by Cut Up Debt on Plaintiff's behalf and the CFPB complaint submitted by Cut Up Debt (including the response received to same by ProCollect).

<u>ARGUMENTS & AUTHORITY</u>

<u>STANDARD</u>

5. As recently set out by this Court in *Cook v. City of Tyler*, No. 6:17-CV-00333-RWS, 2018 U.S. Dist. LEXIS 158772, at *9 (E.D. Tex. 2018) (Schroeder III, J.), the standard for review of a summary judgment is as follows:

> The Court renders summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining whether a genuine issue for trial exists, a court views all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).
>
> The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

<u>PROCOLLECT'S ACTIONS DO NOT VIOLATE
THE FDCPA OR TDCA AS A MATTER OF LAW</u>

6. For Plaintiff's FDCPA §§1692e(2)(A) and 1692e(10) as well as TDCA § 392.302(8) claims to survive summary judgment, Plaintiff must establish a material fact that

ProCollect intentionally and knowingly misrepresented the "character, amount, or legal status of a debt" or used a "false representation or deceptive means to collect or attempt to collect any debt." *See* FDCPA §§1692e(2)(A) and 1692e(10); TDCA § 392.302(8).

7. Under the FDCPA (and TDCA as § 392.302(8) mirrors FDCPA § 1692e(2)(A)), ProCollect may reasonably rely on the information provided to it by the Original Creditor and has no further duty to make any determination whether the Original Creditor calculated the alleged amount due correctly pursuant to the Lease. Even if ProCollect did report inaccurate information, Plaintiff still has a continuing burden to prove by preponderance of evidence that the violation was knowing and intentional. *See e.g.*:

- *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006):

    Within reasonable limits, Capital and Hasson were entitled to rely on their client's statements to verify the debt. *Accord Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496, 500-01 (E.D.N.Y. 2002), *Beattie v. D.M. Collections*, *Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991) ("Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past.").

- *Ducrest v. Alco Collections*, 931 F. Supp. 459, 462 (M.D. La. 1996):

    Remembering the object of the FDCPA, and reading it as a whole, to state a claim under § 1692e(2), plaintiff would have to show that defendant knowingly misrepresented the character, amount, or legal status of the debt. The language "false representation of the character, amount, or legal status of any debt" in § 1692e(2)(A) must be read in conjunction with what it defines - a "false, deceptive, or misleading representation." These terms clearly contemplate a knowing and intentional act. It is undisputed that defendant relied on the information provided to it by Broadmoor Plantation Apartments in demanding payment of this debt. Plaintiff's claim under this section of the FDCPA has no merit because she has not shown that any misrepresentation of the amount of the debt claimed was knowing or intentional.

- *Mammen v. Bronson & Migliaccio*, LLP, 715 F. Supp. 2d 1210, 1213 (M.D. Fla. 2009):

> The Fair Debt Collection Practices Act, (FDCPA), 15 U.S.C.S. § 1692 et seq., is a remedial statute, and its provisions are to be liberally construed liberally in favor of the consumer debtor. Courts in the Eleventh Circuit have construed the FDCPA to be a strict liability statute. A single violation of any provision is sufficient to trigger liability. However, a narrow exception to strict liability applies to strict liability for certain provisions of the FDCPA. A debt collector may reasonably rely on information provided by the creditor under 15 U.S.C.S. § 1692k(c). To prove this defense on summary judgment, the debt collector bears the burden of showing by a preponderance of the evidence that: (1) the debt collector's error was bona fide and unintentional; and (2) that the debt collector maintained reasonable procedures to avoid errors. A violation is considered unintentional if the debt collector can establish lack of specific intent to violate the FDCPA.

- *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140-41 (N.D. Ill. 1998):

  > The *Jenkins* court makes clear that a debt collector has the right to rely on information provided by the client-creditor, and has no obligation to undertake an independent debt validity investigation. *See* 124 F.3d at 833-34 (recognizing that neither attorneys acting as debt collectors nor non-lawyer debt collectors are required to "conduct an independent investigation into the legal intricacies of the client's contract with the consumer"); *see also Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392-93 (D. Del. 1991).

- *Avery v. Gordon*, No. 08-139-HU, 2008 U.S. Dist. LEXIS 86811, at *28-29 (D. Or. 2008)):

  > [T]he FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt. The Gordon defendants rely on *Hulse v. Ocwen Federal Bank*, 195 F. Supp.2d 1188, 1210 (D. Or. 2002), and on the Ninth Circuit decision in *Clark*. In *Clark*, the court quoted with approval district court cases from other jurisdictions holding that a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past. The *Clark* court also held, consistent with the *Hulse* decision, that the FDCPA does not impose upon debt collectors any duty to investigate independently the claims presented by the creditor. The *Clark* case adopted "as a baseline" the holding of the Fourth

> Circuit in *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) that at a minimum, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Clark*, 460 F.3d at 1173-74.

8. Here, as detailed in the *Declaration of David Goodhart* (Exhibit "A") at paragraphs 6 through 14, and the Exhibits attached thereto, ProCollect property verified Plaintiff's account with the Original Creditor and provided that verification to Plaintiff on multiple occasions (Exhibits "7," "8," "9," and "11"), including an explanation of the different amounts sought to be collected, including the special reduction obtained from the Original Creditor, through the CFPB response (Exhibit "12"). In addition, ProCollect's CBR uploads to the CRAs conclusively establish that ProCollect correctly reported the different amounts to the CRAs as the Original Creditor changed the amount of the alleged debt owed by Plaintiff (Exhibit "13"). Simply, ProCollect can reasonably rely on information provided by a decade long relationship with its Original Creditor involving over 3,000 accounts without any necessity to attempt to make a legal determination whether the amounts sought were correctly calculated. Even more so when the Original Creditor reduced the amount of the debt as a special reduction, and the Plaintiff cannot articulate any reasons for the inaccuracy (Exhibits "A-14" and Exhibit "B" – excerpts from Plaintiff's Deposition). *See* Exhibit "A" at paragraphs 11 through 13.

PROCOLLECT'S ACTIONS DO NOT VIOLATE THE FCRA AS A MATTER OF LAW

9. Pursuant to the FCRA at § 1681s-2(b)(1)(A), a data furnisher such as ProCollect, upon receipt of dispute request, must "conduct an investigation" and update its reporting for any inaccurate or incomplete information. The only obligation is that the data furnisher conduct a "reasonable investigation." *See e.g.*:

- *Defer v. World Fin. Network Nat'l Bank*, No. 06-13521, 2007 U.S. Dist. LEXIS 76188, at *10-12 (E.D. Mich. 2007):

  > This provision itself merely requires that furnishers of information such as Defendant "conduct an investigation," § 1681s-2(b)(1)(A), without specifying what this investigation must entail or what standards might govern judicial review of this investigation. The courts, however, have construed the statute as demanding a "reasonable" investigation. *See, e.g., Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004); *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp.2d 492, 510 (D. Md. 2004); *Bruce v. First U.S.A. Bank, N.A.*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000). The courts have further stated that the reasonableness of an investigation generally is a question for the trier of fact to resolve. *See Westra*, 409 F.3d at 827; *Akalwadi*, 336 F. Supp. 2d at 510; *Bruce*, 103 F. Supp. 2d at 1143.

- *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009):

  > The FCRA simply requires data furnishers to follow reasonable procedures to assure the maximum accuracy of each credit report. *See Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). "In addition, if a consumer brings a dispute to the agency as to the completeness or accuracy of a credit report, the agency is required by [the FCRA] . . . to reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant." *Id*. (internal quotation marks, brackets, and citation omitted). The agency is only liable under this provision if it fails to follow reasonable procedures to ensure the accuracy of a credit report - it is not strictly liable simply because a credit report is inaccurate. *Id*.

10. "[H]ow thorough an investigation must be to be reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616-17 (6th Cir. 2012). For example, in *Forgues v. Select Portfolio Servicing, Inc.*, 690 F. App'x 896, 904 (6th Cir. 2017), the district court concluded that the record lacked "any evidence that Defendant's investigation was anything

other than reasonable under the circumstances." ProCollect argues similarly here. ProCollect is not required to get it correct, only conduct a reasonable investigation. Here, no substantive information was provided with the ACDs received, other than the dispute codes. In light of that limited information, and based on ProCollect following its policies and procedures, ProCollect conducted a reasonable investigation by verifying the amount sought with the Original Creditor (and even securing a reduction in favor of Plaintiff). *See* Exhibit "A" at paragraphs 15 through 17, as well as Exhibit "A-14" and ProCollect's previous actions in verifying the account, *supra*.

## CONCLUSION & PRAYER

11. ProCollect's conduct certainly doesn't rise to the level of conduct sought to be restrained by collection practices statutes. ProCollect maintains this case should not have been filed by Plaintiff and Plaintiff's counsel, and was filed in bad faith solely to attempt to extort a settlement by Plaintiff's attorneys' seeking their attorneys' fees.

Defendant moves the Court to grant this Motion for Summary Judgment in whole or in part, and to sign and cause to be entered an order dismissing any or all of Plaintiff's claims against ProCollect, Inc. Defendant prays for all other relief consistent with the granting of this Motion, as the Court deems proper.

Respectfully submitted,

By: _____
JOHN W. BOWDICH
State Bar No. 00796233

BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
(214) 307-9500 – Telephone
(214) 307-5137 – Telecopy
jbowdich@bowdichlaw.com

ATTORNEYS FOR DEFENDANT
PROCOLLECT, INC.

CERTIFICATE OF SERVICE

On January 3, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, Tyler Division using the electronic case filing system of the court, thereby providing service to all parties.

Beth Findsen, Esq.                                    VIA ECF
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
ATTORNEYS FOR PLAINTIFF

By: _____
JOHN W. BOWDICH