IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MELINDA PALMER, | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 6:19-cv-00082 |
| | § | |
| PROCOLLECT, INC. and | § | |
| TRANS UNION, LLC, | § | |
| | § | |
|     *Defendants*. | § | |

## DECLARATION OF DAVID I. GOODHART

    1.    My name is David I. Goodhart. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I am fully competent to provide this Declaration and the foregoing statements are true and correct, and within my personal knowledge.

    2.    I am the General Counsel for ProCollect, Inc. ("ProCollect") and I have served ProCollect in this capacity and outside counsel since 2007. I am familiar with the facts, and claims, and defenses set forth in the litigation styled: Civil Action No. 6:19-cv-00082; *Melinda Palmer v. ProCollect, Inc.,* in the United States District Court, Eastern District of Texas, Sherman Division (the "Lawsuit"). I am the corporate representative of ProCollect in charge of the Lawsuit.

    3.    I have reviewed Plaintiff Melinda Palmer's ("Plaintiff") allegations in the First Amended Complaint [Doc. 8], the discovery responses and deposition of Plaintiff, the documents produced by the Original Creditor, Wilson Crossing Apartments and its property management company, LumaCorp (collectively "Wilson Crossing" or "Original Creditor"), the documents produced by Cut Up Debt, the credit repair company hired by Plaintiff and that wrote all of the

dispute letters for Plaintiff pursuant to an authorization form signed by Plaintiff and produced by Cut Up Debt, as well as ProCollect's account notes (the "Account Summary") for the relevant activity involving Plaintiff's account by ProCollect and the CBR uploads that ProCollect submitted to the consumer reporting agencies ("CRAs") regarding Plaintiff's debt allegedly owed to the Original Creditor. Finally, I was deposed by Plaintiff in this Lawsuit as the corporate representative of ProCollect.

4. I am familiar with ProCollect's policies, procedures and practices, specifically including its dispute response and investigation procedures, and reporting procedures to the CRAs.

5. ProCollect is a third-party debt collector primarily specializing in the collection of debt resulting from breach of lease agreements. ProCollect is not a debt buyer, rather ProCollect is hired by apartment owners and property managers to collect outstanding receivables. To initiate collection of a delinquent account, ProCollect's clients forward an account statement as proof of the alleged debt, the lease application for contact information for the debtor, and first page and signature page of the applicable lease to assist with verification of debtors and responsible parties for each alleged debt.

6. Regarding the debt allegedly owed by Plaintiff, the Original Creditor forwarded a signed Move Out Statement to ProCollect for collection in July 2017. The Move Out Statement, typically referred to by ProCollect as the "Final Account Statement" or "FAS," provided ProCollect with a detailed statement of the charges comprising the amount of the alleged debt. A true and correct copy of the Final Account Statement is attached hereto as Exhibit "A-1" and incorporated herein which details the alleged debt in the amount of $2,225.69. As is customary when the Original Creditor forwards the Final Account Statement, the Original Creditor also

forwarded a copy of Plaintiff's Lease Application as well as the first and last page of Plaintiff's original Lease, a true and correct copy of which is attached as Exhibit "A-2" and incorporated herein. Notably, the Final Account Statement indicates that Plaintiff failed to pay rent in May, 2017, an eviction proceeding was filed by the Original Creditor on May 15, 2017, and Plaintiff moved out on May 26, 2017 with two more months remaining on the Lease term to July 31, 2017. *See* Exhibit "A-1." The amounts due, including the rent owed, were derived from a renewal lease that ProCollect obtained from the Original Creditor during this lawsuit and is attached hereto as Exhibit "A-3" (sans certain irrelevant addendums) and incorporated herein.

7. ProCollect's collection efforts began in July, 2017 along with credit reporting through CBR uploads to the CRAs in August, 2017 of the alleged amount (which is rounded pursuant to CRA guidelines) to $2,226. On October 25, 2017, the Original Creditor contacted ProCollect via email to increase the amount of the alleged debt by $1,175.00 to $3,400.69 because Plaintiff's husband, also a debtor on Plaintiff's Account and co-signor of the Lease, damaged the Original Creditor's carport when moving out of the apartment in May, 2017. A true and correct copy of such correspondence and Repair Invoice from the Original Creditor to ProCollect is attached as Exhibit "A-4" and incorporated herein. The entries into ProCollect's Account Summary related to the increase in the alleged debt is shown in Exhibit "A-5" which is also incorporated herein.

8. On October 9, 2018,[1] ProCollect received a letter from Plaintiff dated October 3, 2018, a true and correct copy of which is attached as Exhibit "A-6." This letter was processed by ProCollect on October 10, 2018 as a dispute letter and request for validation. Pursuant to its

---

[1] From the inception of ProCollect's collection efforts in July, 2017 until October 8, 2018, ProCollect did not have any oral communications with Plaintiff, nor receive any correspondence with Plaintiff.

policies and procedures, ProCollect (1) moved the Account to a cease and desist category (marked on the Account Summary as "CCC" on October 10, 2018), (2) marked the Account as disputed for future credit reporting October 10, 2018, and (3) initiated the validation process by contracting the Original Creditor on October 11, 2018. That contract with the Original Creditor to verify the debt resulted in the Original Creditor agreeing to reduce the amount due to a more manageable amount for Plaintiff to pay, (shown on Account Summary as "Per client special reduction, account reduced to $1999…" on October 11, 2018). These actions are memorialized on ProCollect's Account Summary, a true and correct copy of which is attached as Exhibit "A-7" and incorporated herein.

9.  Following the Original Creditor's reduction, ProCollect mailed its form LT4 letter on October 11, 2019 to provide Plaintiff with notice of the new amount of the debt as well as provide copy of original documents supporting the debt, including the Final Account Statement. A true and correct copy of this validation response letter is attached hereto as Exhibit "A-8" and incorporated herein. Despite using the contact address provided by Plaintiff in her October 3, 2018 dispute/validation letter attached as Exhibit "A-6," ProCollect's validation response letter was returned as undeliverable. *See* Exhibit "A-8."  As a result, the letter was re-issued on October 19, 2018 to Plaintiff's forwarding address. A true and correct copy of ProCollect's October 19, 2018 debt validation response letter is attached as Exhibit "A-9" and incorporated herein and memorialized on the Account Summary on such date as provided in Exhibit "A-7."

10.  On November 8, 2018, ProCollect received another dispute letter, purportedly from Plaintiff. As later learned through discovery in this case, all dispute letters were written by a credit repair company, Cut Up Debt, which were not reviewed by Plaintiff before they were sent. A true and correct copy of Plaintiff's second dispute letter is attached as Exhibit "A-10"

and incorporated herein. As ProCollect is not required by the FDCPA to conduct an independent investigation into the legal intricacies of the applicable lease or the amounts verified by the Original Creditor without any contrary evidence submitted by Plaintiff, ProCollect responded by sending another form LT4 letter dated November 8, 2018, that verified the debt and included the same Final Account Statement.  A true and correct copy of ProCollect's November 8, 2018 dispute validation response letter is attached hereto as Exhibit "A-11" and incorporated herein.

11. ProCollect has been collecting apartment debt for LumaCorp, the property manager for the Wilson Crossing Apartments since December of 2009, including over 3,000 accounts. During that entire time period, ProCollect has not had any lawsuits or recurring issues of alleged miscalculations or other errors in preparing final account or move-out statements by the Original Creditor. Thus, ProCollect reasonably relied on the verification of the debt amount provided by the Original Creditor, who has provided thousands of reliable statements in the past. Such reliance is even more reasonable after the Original Creditor was gracious enough to reduce the amount of the alleged debt from $3,401.00 to $1,999.00 to assist Plaintiff in getting the debt paid and ensuring that ProCollect was not attempting to collect an amount greater than the lease allowed.

12. Following those two dispute letters sent directly to ProCollect, Plaintiff (again prepared by Cut Up Debt) initiated a complaint to the Consumer Financial Protection Bureau ("CFPB") on December 6, 2018 again alleging that ProCollect was using false statements or representation by attempting to collect the wrong amount.  ProCollect responded one day later on December 7, 2018, providing a full explanation of the different amounts sought to be collected by the Original Creditor over the length of the collection period, detailing the original amount of $2,226, the reason for the increase to $3,401, and the special reduction to $1,999. Plaintiff did

not submit any feedback to ProCollect's CFPB response and the CFPB closed the complaint. The CFPB Complaint and ProCollect's Response (obtained from Cut Up Debt) is attached hereto as Exhibit "A-12" and incorporated herein.

13. With respect to Plaintiff's FDCPA §§ 1692e(2)(a) and 1692e(10) and TDCA § 392.302(8) claims, ProCollect accurately and timely changed its credit reporting to the CRAs. Attached hereto as Exhibit "A-13" is a copy of ProCollect's CBR uploads to all the CRAs (Equifax, Experian and TransUnion) in required Metro 2 format for the months of November, 2017, and October 2018 through January, 2019. The date of each upload is highlighted. For the November 01, 2017 CBR upload (first upload on Exhibit "A-13"), this shows the first month that the amount of the debt was increased from the original amount of $2,226 to $3,401 due to the addition of the carport damage repair invoice. Such reporting remained unchanged each month through the upload on October 01, 2018 (the second upload on Exhibit "A-13"). Because Plaintiff's dispute was received on October 9, 2018 after the October 1 upload, and because the Original Creditor's debt reduction occurred on October 11, 2018, the third upload on Exhibit "A-14" dated November 01, 2018 includes the code to show the debt is disputed by the consumer (highlighted "XB") and the amount changed to $1,999. The remaining uploads on Exhibit "A-13" dated December 01, 2018 and January 01, 2019 remain the same as the November 2018 upload as disputed by the consumer and with the reduced amount of the debt.

14. Each of these CBR uploads to the CRAs correctly reports the amount of the debt as claimed by the Original Creditor in a timely fashion. ProCollect also correctly reported the debt as disputed with the CRAs following receipt of Plaintiff's dispute. As ProCollect correctly and accurately reported the debt as provided by the Original Creditor, there can be no violation of FDCPA §§ 1692e(2)(A) or 1692e(10), nor TDCA § 392.302(8).

15. With respect to the FCRA claim asserted by Plaintiff, ProCollect reasonably investigated the automated consumer disputes ("ACD") received from the CRAs and correctly verified the debt, particularly because the disputes failed to provide any information that would contradict or call into question the verified amounts provided by the Original Creditor. As shown on ProCollect's Account Summary attached as Exhibit "A-7," the ACDs received by ProCollect are as follows:

- On November 14, 2018, ProCollect received an ACD from TransUnion with dispute codes "1" (Not his/hers. Provide or confirm complete ID) and "118" (Disputes current balance and/or Amount Past Due. Verify current balance or Amount Past Due);

- On November 26, 2018, ProCollect received an ACD from Experian with dispute codes "1" and "112" (Consumer states inaccurate information. Provide or confirm complete ID and verify all Account Information),

- On December 19, 2018, ProCollect received an ACD from Equifax with dispute codes 1 and 112; and

- On December 27, 2018, ProCollect received an ACD from Experian with dispute codes "1" and "112."

16. Each CRA will review the consumer dispute received, determine the appropriate dispute code, then forward the ACD to ProCollect for response, called an Automated Consumer Dispute Verification (ACDV). If the consumer attaches relevant materials or documents to their dispute to the CRAs, then the CRAs when submitting the ACDs will (typically) include images from the consumer's dispute that would assist the data furnisher, like ProCollect, with its investigation or establish why Plaintiff was disputing the account reported. A copy of such dispute letters from Plaintiff to the CRAs were obtained by subpoena from Cut Up Debt as well as Plaintiff, which are attached as Exhibit "A-14" and incorporated herein. Note that ProCollect does not know which of these letters were actually sent to the CRAs by, or on behalf of Plaintiff;

ProCollect only knows that no images were associated with the any of the ACDs received from the CRAs.

17. For each of the ACDs received, ProCollect followed its policies and procedures for investigating a dispute involving the amount of the apartment debt alleged, a true and correct copy of which is attached as Exhibit "A-15" and incorporated herein. As Plaintiff's Account was already in a cease and desist category (CCC), collection was already suspended satisfying the first step. Because Plaintiff's Account was already being reported as disputed due to her October 3, 3018 letter, the second step was likewise completed. As Plaintiff failed to submit any information or supporting documentation with her dispute to the CRAs (*see* Exhibit "A-14") the third step was inapplicable. To satisfy the fourth and fifth steps, ProCollect had also previously provided the Final Account Statement (FAS) to Plaintiff and verified the amount with the Original Creditor, obtaining the special reduction. Thus, ProCollect completed a reasonable investigation regarding Plaintiff's dispute that the debt as inaccurate, and without Plaintiff providing any specific reasons why such debt was inaccurate or supporting proof, correctly responded by submission of ACDV's with the ACDV Response Code 1 (Account information accurate as of date reported).

18. Despite ProCollect properly verifying and Plaintiff's debt, properly reporting the debt to the CRAs, properly investigating Plaintiff's dispute, and explaining the different amounts sought to be collected in the CFPB response received by Plaintiff, ProCollect received a demand letter from Plaintiff's Counsel dated January 16, 2019 demanding a settlement and threatening to file suit. Rather than deal with a litigious debtor and risk litigation costs, ProCollect elected to simply cease collection and request deletion of Plaintiff's account with the CRAs. Despite such deletion, Plaintiff still filed this litigation against ProCollect. ProCollect learned in discovery

that Cut Up Debt referred the matter to Plaintiff's Counsel and that both Cut Up Debt and Plaintiff's Counsel knew of the deletion prior to filing suit. Finally, ProCollect also learned in discovery, from Plaintiff's deposition, that Plaintiff did not review the dispute letters but relied up Kyle Frasier with Cut Up Debt to seek to improve her credit and that Plaintiff could not articulate any dispute with the debt sought to be collected by ProCollect and the Original Creditor. It is for those reasons that ProCollect takes the position that this lawsuit was instituted, and then maintained in bad faith, solely to attempt to extract a nuisance value settlement from ProCollect.

Executed within the United States, in Dallas, Texas on January 3, 2020.

*David Goodhart*

By:_____
      DAVID I. GOODHART,
      PROCOLLECT, INC. GENERAL COUNSEL